1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JASIM G.,

                 Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

Case No. 2:19-cv-754-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Local Rule MJR 13.

This case is before the Court for the second time, having been reversed and remanded for further administrative proceedings by the Ninth Circuit. *See* AR 634-659. On January 27, 2011, Administrative Law Judge ("ALJ") M.J. Adams issued a decision finding plaintiff not disabled. *See* AR 11-20. In an opinion filed on August 18, 2014, the Ninth Circuit reversed, finding that the ALJ erred in discounting plaintiff's testimony, and in weighing opinions from plaintiff's treating providers. *See* AR 645-55. On remand, ALJ Adams issued a new decision, dated May 9, 2019, again finding plaintiff not disabled. *See* AR 456-70. Plaintiff seeks review of this latest decision.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I.    <u>ISSUES FOR REVIEW</u>

A.    Did the ALJ harmfully err in discounting plaintiff's symptom testimony?

B.    Did the ALJ harmfully err in discounting opinions from plaintiff's treating and examining medical providers?

II.    <u>DISCUSSION</u>

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ assesses the claimant's residual functional capacity ("RFC") to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, to determine, at step five, whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the ALJ identified and may not affirm for a

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

1    different reason. *Id.* at 1010. Furthermore, "[l]ong-standing principles of administrative

2    law require us to review the ALJ's decision based on the reasoning and actual findings

3    offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

4    adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

5    1219, 1225-26 (9th Cir. 2009) (citations omitted).

6    A.    The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony

7            In weighing a plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*

8    *v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether

9    there is objective medical evidence of an underlying impairment that could reasonably

10   be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763

11   F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no

12   evidence of malingering, the second step allows the ALJ to reject the claimant's

13   testimony of the severity of symptoms if the ALJ can provide specific findings and clear

14   and convincing reasons for rejecting the claimant's testimony. *Id.*

15          Plaintiff testified that he cannot work because he gets nervous and tense. *See*

16   AR 587-88. He testified that he has nightmares that interfere with his sleep. *See* AR 41.

17   He testified that he has trouble interacting with others and does not like to go outside.

18   *See* AR 42, 594. He testified that he gets depressed and does not take care of his

19   personal grooming. *See* AR 43. Plaintiff testified that he has anger episodes three to

20   four times a week. *See* AR 591-92, 596. Plaintiff testified that he has trouble with

21   memory, concentration, and adaptation to changes. *See* AR 594-95.

22          The ALJ found that plaintiff's medically determinable impairments could possibly

23   produce his alleged symptoms, satisfying the first step of the Ninth Circuit's test. *See*

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 3

1   AR 463. But the ALJ found plaintiff had not met the second step of the Ninth Circuit's

2   test, and discounted plaintiff's testimony regarding the severity of his alleged symptoms.

3   *See* AR 463-66. The ALJ reasoned that plaintiff's testimony was inconsistent with the

4   medical evidence, and with plaintiff's activities of daily living. *See* AR 464-65. The ALJ

5   further reasoned that the record contained other inconsistencies, including evidence of

6   malingering, that justified discounting plaintiff's testimony. *See* AR 465-66.

7          The ALJ did not harmfully err in discounting plaintiff's testimony. Although much

8   of the ALJ's analysis here mirrors the analysis from his 2011 decision, which the Ninth

9   Circuit rejected, the ALJ reasonably found evidence of malingering based on new

10  evidence. Affirmative evidence of malingering—standing alone—can support an ALJ's

11  rejection of the plaintiff's testimony. *See Schow v. Astrue*, 272 F. App'x 647, 651 (9th

12  Cir. 2008) (The existence of "affirmative evidence suggesting malingering vitiates the

13  clear and convincing standard of review") (internal quotation marks omitted); *see also*

14  *Baghoomian v. Astrue*, 319 F. App'x 563, 565 (9th Cir. 2009).

15         The ALJ noted that, contrary to plaintiff's claims, an investigation done by the

16  Cooperative Disability Investigations Unit of the Office of the U.S. Inspector General

17  documented that plaintiff was "frequently not at home and spen[t] time visiting friends

18  and a girlfriend," contrary to his testimony that he has trouble interacting with others and

19  does not like to go outside. *See* AR 466; *see also* AR 4032-34. During an interview,

20  plaintiff showed no signs of cognitive deficits, and was able to understand and answer

21  questions, contrary to his testimony that he has trouble interacting with others,

22  concentrating, and remembering. AR 466; *see* AR 4034-35. This evidence supports the

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

1 | ALJ's determination of malingering, and thus supports his rejection of plaintiff's

2 | symptom testimony.

3 |      The Court need not address whether the ALJ erred in discounting plaintiff's

4 | testimony as inconsistent with the medical evidence or his daily activities because any

5 | error was harmless. "[A]n error is harmless so long as there remains substantial

6 | evidence supporting the ALJ's decision and the error 'does not negate the validity of the

7 | ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

8 | (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

9 | The ALJ's malingering determination remains valid regardless of any error in finding that

10 | plaintiff's testimony was inconsistent with the medical evidence or his daily activities.

11 | The ALJ therefore did not harmfully err in discounting plaintiff's symptom testimony.

12 | B.    The ALJ Partially Erred in Evaluating the Opinions of Plaintiff's Treating and Examining Providers

13 |      The Social Security regulations separate opinions from medical professionals

14 | between those from "acceptable medical sources," and those from other medical

15 | sources. *See* 20 C.F.R. §§ 404.1502(a), (d), (e), 416.902(a), (d), (e). Acceptable

16 | medical sources are those with doctoral degrees, such as physicians and psychologists.

17 | *See* 20 C.F.R. §§ 404.1502(a), 416.902(a). Other sources include nurse practitioners[1]

18 | and licensed social workers. *See* 20 C.F.R. §§ 404.1502(d), (e), 416.902(d), (e).

19 |      In evaluating opinions from acceptable medical sources, the ALJ must provide

20 | "clear and convincing" reasons for rejecting the uncontradicted opinions of a treating or

21 |

---

[1] The Commissioner issued revised regulations regarding nurse practitioners, potentially changing the standard by which the ALJ's reasons are judged. *See* 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). Those regulations apply only to claims filed after March 27, 2017, and thus do not apply here. *See id.*

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 5

examining doctor. *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining doctor's opinion is contradicted, the ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.*

With respect to opinions from other sources, the ALJ need only provide germane reasons that are specific to each source. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (holding that nurse practitioners are "other sources" rather than acceptable medical sources, and an ALJ need only provide germane reasons to discount their opinions).

1.    The ALJ Partially Erred in Rejecting Plaintiff's Treating Providers' Opinions

Christine Youdelis-Flores, M.D. one of plaintiff's treating doctors, and John Blatchford, LICSW, a treating therapist, jointly opined that plaintiff was "highly unlikely" to be able to work due to reported symptoms including nervousness and poor memory. AR 425. Dr. Youdelis-Flores also completed a psychological/psychiatric evaluation form, noting her observations of plaintiff's symptoms, and that plaintiff's symptoms would have a "significant impact" on his ability to work. *See* AR 1495-99.

Lawrence McCann, LICSW, completed a psychological evaluation report, with which Nina Geiger, ARNP, concurred. *See* AR 279-86; *see also* AR 262. The report was based on these providers' treatment of plaintiff, as shown by medical records attached to the report. *See* AR 279. Mr. McCann and Ms. Geiger opined that plaintiff was markedly limited in multiple areas of cognitive and social functioning related to basic work activities. *See* AR 284.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

The ALJ gave these opinions little weight. AR 466. The ALJ reasoned that the opinions from these providers were inconsistent with the overall medical record, "which includes treatment records documenting intact or nearly intact functioning." *Id.* The ALJ reasoned that the opinions from Dr. Youdelis-Flores and Mr. Blatchford were conclusory and did not include specific functional assessments of plaintiff's abilities. *Id.* Similarly, the ALJ reasoned that Nurse Practitioner Geiger did not include objective exam findings to support her opinions or explain the bases for them. *Id.* The ALJ added that Mr. McCann was "not an objective source of medical opinions, as he has helped [plaintiff] in his efforts to obtain benefits." *Id.*

The ALJ erred in rejecting plaintiff's treating providers' opinions as inconsistent with the medical evidence because the Ninth Circuit already rejected this reasoning. In his 2011 decision, the ALJ reasoned that the treating providers' opinions were inconsistent with the medical evidence, including documentation that plaintiff was "largely cooperative on exam and has exhibited good eye contact, organized and logical thought content, and focused attention." *See* AR 16, 18. The Ninth Circuit found that substantial evidence did not support this conclusion because the ALJ failed to consider the noted observations in the context of the overall diagnostic picture, which consistently showed that plaintiff suffered severe symptoms such as ongoing depression, nightmares, and memory loss. AR 647-48.

Nothing in the ALJ's present decision counters the Ninth Circuit's conclusion. Here, the ALJ pointed to findings similar to those in his 2011 decision, noting that plaintiff "retained average intellect, good attention, intact memory, and appropriate appearance." AR 466. Given the Ninth Circuit's earlier determination that the ALJ

1   cherry-picked the evidence, the Court concludes the ALJ once again erred in rejecting

2   plaintiff's treatment providers' opinions as inconsistent with the medical evidence.

3          The ALJ did not err, however, in discounting the opinions of Dr. Youdelis-Flores

4   and Mr. Blatchford as conclusory. "'The ALJ need not accept the opinion of any

5   physician, including a treating physician, if that opinion is brief, conclusory, and

6   inadequately supported by clinical findings.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir.

7   2020) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ

8   reasonably determined that Dr. Youdelis-Flores and Mr. Blatchford's opinion that

9   plaintiff was "highly unlikely" to be able to work was conclusory, and thus did not err in

10  rejecting it. *Cf. McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (holding the ALJ

11  reasonably rejected a doctor's conclusion that the claimant could not work because that

12  is a determination reserved to the Commissioner).

13         This line of reasoning does not extend to the ALJ's treatment of Nurse

14  Practitioner Geiger's opinions. The ALJ erred in rejecting Ms. Geiger's opinions as

15  inadequately explained and/or supported by objective exam findings. Even where a

16  doctor's opinion is brief and conclusory, an ALJ must consider its context in the record.

17  *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding the ALJ erred in

18  finding a treating doctor's opinion "conclusory" and supported by "little explanation,"

19  where the ALJ "overlook[ed] nearly a dozen [treatment] reports related to head, neck,

20  and back pain"). The record includes treatment notes from Nurse Practitioner Geiger

21  that could support her opinions, as the Ninth Circuit previously indicated. *See* AR 647;

22  *see also* AR 259-69, 375-78, 388-91, 396-97, 414-17. The ALJ did not specify why

23  these records did not support Ms. Geiger's opinions, and thus erred. *See* AR 466.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

1    To the extent the ALJ faulted Nurse Practitioner Geiger for failing to identify

2 "objective" findings in her report, the ALJ erred because he did not take into

3 consideration the unique nature of mental health treatment. Mental health evaluations

4 must depend on measures that may be considered subjective in other contexts, such as

5 the patient's self-reports, because "'unlike a broken arm, a mind cannot be x-rayed.'"

6 *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Poulin v. Bowen*, 817

7 F.2d 865, 873 (D.C. Cir. 1987)). Ms. Geiger documented plaintiff's self-reports, as well

8 as her observations of plaintiff, and the ALJ therefore erred in rejecting her opinions for

9 failing to include objective findings.

10    The ALJ also erred in rejecting Mr. McCann's opinions on the basis that he was

11 "not an objective source of medical opinions, as he has helped [plaintiff] in his efforts to

12 obtain benefits." AR 466. There is nothing out of the ordinary about a social worker

13 therapist helping his patient obtain disability benefits. Moreover, ALJs "may not assume

14 that [providers] routinely lie in order to help their patients collect disability benefits."

15 *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995); *see also Smolen v. Chater*, 80 F.3d

16 1273, 1289 (9th Cir. 1996) (holding that the ALJ erred in rejecting lay testimony from

17 family members on the assumption that they were inherently "advocates, and biased").

18 That Mr. McCann assisted plaintiff in pursuing disability benefits was not a germane

19 reason to reject Mr. McCann's opinions.

20    In sum, the ALJ erred in rejecting the opinions of Mr. McCann and Nurse

21 Practitioner Geiger but did not err in rejecting the conclusory opinions of Dr. Youdelis-

22 Flores and Mr. Blatchford.

23    2.    The ALJ Erred in Discounting the Opinions of Examining Psychologist
            Victoria McDuffee, Ph.D.

24

25

1   Dr. McDuffee examined plaintiff on June 26, 2009. *See* AR 206-13. Dr. McDuffee

2   performed a mental status examination and made clinical findings. *See* AR 206-08, 212-

3   13. Dr. McDuffee opined that plaintiff had no cognitive limitations but had severe social

4   limitations. *See* AR 209.

5   The ALJ gave Dr. McDuffee's opinions little weight. The ALJ adopted the

6   analysis from his 2011 decision, stating that "[t]he Appeals Council did not assign error

7   to this finding."[2] AR 467. In the 2011 decision, the ALJ accepted Dr. McDuffee's opinion

8   that plaintiff had no cognitive limitations but rejected Dr. McDuffee's opinion that plaintiff

9   had severe social limitations because she "largely relied on [plaintiff's] self-report." AR

10  18. The ALJ further reasoned that plaintiff was on no medications at that time. *Id.*

11  The ALJ erred in rejecting Dr. McDuffee's social limitation opinions. An ALJ may

12  not reject an opinion from a psychologist for being too heavily based on the plaintiff's

13  self-reports when the doctor performs a mental status evaluation and/or a clinical

14  interview because those are objective measures that can separately support the

15  doctor's opinion.  *See Buck*, 869 F.3d at 1049. Dr. McDuffee conducted a mental status

16  exam and made clinical findings, so the ALJ's determination was not based on

17  substantial evidence in the record. *See* AR 206-08, 212-13.

18  The ALJ further erred in rejecting Dr. McDuffee's social limitation opinions on the

19  basis that plaintiff was not taking any medications at the time of Dr. McDuffee's exam.

20  Plaintiff alleged his psychiatric problems became severe after his brother was killed in

21  April 2009. *See* AR 230. He saw Dr. McDuffee in June 2009, at which time she

22

23  _____

    [2] The Ninth Circuit noted the ALJ's evaluation of Dr. McDuffee's opinions but declined to

24  address whether the ALJ erred because it had already found that the ALJ erred in
    evaluating plaintiff's treating providers' opinions. *See* AR 650 n.8.

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

1    recommended that plaintiff's access to medical care be evaluated, along with whether

2    he should be on psychiatric medication. *See* AR 210. Plaintiff began taking medication

3    shortly after his appointment with Dr. McDuffee. *See* AR 214-29. The fact that he was

4    not immediately on medication when his problems allegedly became severe was not a

5    convincing or legitimate reason to reject Dr. McDuffee's social limitation opinions. The

6    ALJ therefore erred in rejecting those opinions.

7           3.      The ALJ Did Not Harmfully Err in Rejecting the Opinions of Examining
                    Psychologist Margaret Dolan, Ph.D.

8           Dr. Dolan examined plaintiff on May 7, 2012. *See* AR 3990-4001. She performed

9    a clinical interview and mental status exam. *See id.* Dr. Dolan opined that plaintiff

10   "would have difficulty grasping and remembering many job requirements. He would

11   need a great deal of ongoing direction, to which he reportedly objects." AR 3999. Dr.

12   Dolan opined that plaintiff would not be able to perform independently or persist in a job.

13   *Id.* Dr. Dolan opined that plaintiff "would need a great deal of support and direction to

14   manage even a part-time job. He could be disruptive without careful handling." *Id.* Dr.

15   Dolan opined that plaintiff could not adjust to a job but would need it adjusted to his

16   needs. AR 4000.

17          The ALJ gave Dr. Dolan's opinions little weight. AR 467. The ALJ reasoned that

18   Dr. Dolan's opinions were contradicted by treatment records, "which show that

19   [plaintiff's] baseline condition typically includes intact memory, fair to intact attention,

20   and intact social functioning." *Id.* The ALJ further reasoned that Dr. Dolan's opinions

21   were inconsistent with plaintiff's activities of daily living. *Id.*

22          The ALJ erred in rejecting Dr. Dolan's opinions as contradicted by the treatment

23   records. The ALJ's analysis here was the same as his analysis regarding plaintiff's

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 11

1  treating providers' opinions. *See* AR 467. As discussed above, the Ninth Circuit already

2  rejected that analysis. *See supra* Part II.B.1. The ALJ therefore erred in relying on that

3  analysis to reject Dr. Dolan's opinions.

4         The ALJ did not err, however, in rejecting Dr. Dolan's opinions as inconsistent

5  with plaintiff's activities of daily living. A material inconsistency between a doctor's

6  opinion and a claimant's activities can furnish a specific, legitimate reason for rejecting

7  the treating physician's opinion.  *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.

8  2001) (upholding ALJ's decision to discredit treating physician where his opinions were

9  "inconsistent with the level of activity that [plaintiff] engaged in"). Although the Ninth

10 Circuit found that the ALJ erred in evaluating plaintiff's activities of daily living in 2011,

11 the ALJ added new activities that contradict Dr. Dolan's opinions. *See* AR 465, 654. The

12 ALJ noted that plaintiff performed 20 hours a month of court-mandated community

13 service, which plaintiff reported went well. *See* AR 465, 467. Plaintiff reported that he

14 was able to follow simple instructions during his community service, contradicting Dr.

15 Dolan's opinion on that issue. *See* AR 1738. The ALJ further noted that plaintiff took a

16 trip to Iraq to visit family, which plaintiff reported went well. *See* AR 465, 467. The

17 record indicates that plaintiff was in Iraq for nearly two months. *See* AR 1761, 1754.

18 International travel requires multiple activities that contradict Dr. Dolan's opinions, such

19 as remembering one's luggage, following instructions from airport and airline personnel,

20 and adapting to the inevitable disruptions involved. The ALJ reasonably concluded that

21 plaintiff's ability to take such a substantial trip contradicted Dr. Dolan's opinions. *See* AR

22 465, 467.

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

Although the ALJ's analysis of Dr. Dolan's opinions was not free from error, the errors were harmless. *See Molina*, 674 F.3d at 1115. The ALJ gave a specific and legitimate reason for rejecting Dr. Dolan's opinions—inconsistency with plaintiff's activities—and that reason remains valid despite the ALJ's erroneous determination that Dr. Dolan's opinions were inconsistent with the treatment records. The ALJ therefore did not harmfully err in rejecting Dr. Dolan's opinions.

4.    The ALJ Did Not Harmfully Err in Rejecting the Opinions of Reviewing Psychologist Aaron Burdge, Ph.D., and Dr. David Deutsch[3]

Dr. Burdge and Dr. Deutsch reviewed plaintiff's medical records to assess his mental health. *See* AR 4002-06. Dr. Burdge and Dr. Deutsch opined that plaintiff has marked or severe limitations in nearly all work-related abilities. *See* AR 4004. The doctors also opined that plaintiff met listings 12.04 and 12.06. *See* AR 4006.

The ALJ gave little weight to the opinions of Dr. Burdge and Dr. Deutsch. AR 467. The ALJ reasoned that the doctors' opinions were inconsistent with the medical evidence, inconsistent with plaintiff's daily activities, and based on review of limited records. *Id.*

The ALJ did not harmfully err in rejecting the opinions of Dr. Burdge and Dr. Deutsch. The ALJ's analysis here largely mirrored his analysis of Dr. Dolan's opinions. *See* AR 467. The same analysis thus applies, such that the ALJ erred in rejecting Dr. Burdge and Dr. Deutsch's opinions as inconsistent with the medical evidence but did not err in rejecting those opinions as inconsistent with plaintiff's activities. *See supra* Part II.B.3.

---

[3] The record does not identify Dr. Deutsch's doctoral degree. *See* AR 4002-06.

1

C.   <u>Remand with Instructions for Further Proceedings</u>

2

"'The decision whether to remand a case for additional evidence, or simply to

3

award benefits[,] is within the discretion of the court.'" *Trevizo*, 871 F.3d at 682 (quoting

4

*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and

5

the record is uncertain and ambiguous, the court should remand to the agency for

6

further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if

7

the court concludes that additional proceedings can remedy the ALJ's errors, it should

8

remand the case for further consideration. *Revels*, 874 F.3d at 668.

9

The Ninth Circuit has developed a three-step analysis for determining when to

10

remand for a direct award of benefits, referred to as the "credit-as-true" rule. Remand

11

for benefits is appropriate only where

12

13

14

"(1) the record has been fully developed and further administrative
proceedings would serve no useful purpose; (2) the ALJ has failed to
provide legally sufficient reasons for rejecting evidence, whether claimant
testimony or medical opinion; and (3) if the improperly discredited
evidence were credited as true, the ALJ would be required to find the
claimant disabled on remand."

15

16

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison*, 759 F.3d at 1020). Even when each

17

element is satisfied, the district court still has discretion to remand for further

18

proceedings or for award of benefits. *See Leon*, 80 F.3d at 1045.

19

The appropriate remedy here is to remand for further proceedings. Although

20

plaintiff has met the first step of the credit-as-true rule, he has not met the second

21

because conflicts still exist in the record. The opinions of Nurse Practitioner Geiger, Mr.

22

McCann, and Dr. McDuffee conflict with the opinions of Wayne Dees, Psy.D., Gerald

23

Peterson, Ph.D., and Beth Fitterer, Ph.D. *Compare* AR 206-13, *and* AR 279-86, *with* AR

24

230-52, *and* AR 276. These conflicts can be remedied on remand.

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 14

On remand, the ALJ shall reevaluate the opinions of Nurse Practitioner Geiger, Mr. McCann, and Dr. McDuffee. The ALJ shall reassess plaintiff's RFC and reevaluate all relevant steps of the disability evaluation process. The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

IV.    <u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ erred when he determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

Dated this 28th day of April, 2020.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge